UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GRENELL JONES

      Plaintiff,

                                          Case No. 06-11211

v.

                                          Honorable Patrick J. Duggan

GENERAL MOTORS CORPORATION,

      Defendant.
_____/

**OPINION AND ORDER**

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on March 13, 2007.

PRESENT:        THE HONORABLE PATRICK J. DUGGAN
                       U.S. DISTRICT COURT JUDGE

On March 21, 2006, Grenell Jones ("Plaintiff"), a former employee of General Motors Corporation ("Defendant"), filed a complaint in this Court asserting that Defendant unlawfully denied Plaintiff Sickness and Accident ("S&A") benefits as provided by the General Motors Life and Benefits Disability Program for Salaried Employees ("Plan").  Presently before this Court are Plaintiff's Motion for Judgment on the Administrative Record and Defendant's Motion to Affirm the Administrator's Decision With Respect to Sickness and Accident Benefits or, in the alternative, for Judgment on the Administrative Record.  On December 8, 2006, the Court sent a Notice informing the parties that it was dispensing with oral argument pursuant to Eastern

District of Michigan Local Rule 7.1(e)(2).

**I.     Background**

Defendant's Plan is an employer-funded disability plan governed by the Employee Retirement Income Security Act of 1947 ("ERISA"), 29 U.S.C. § 1001 *et seq*.  Plan benefits are paid by Defendant, which is also the Plan Administrator.  (*See* Art. I, 1.01, AR 10).  As Plan Administrator, Defendant has the discretion to administer and interpret the Plan, including the determination of eligibility for, and payment of, Plan benefits.  (*Id.*).  The Plan also gives Defendant the authority to appoint a third-party administrator to render initial recommendations on benefits claims.  (Art. II, 2.08, AR 20).  Defendant has appointed Sedgwick CMS ("Sedgwick") as the third-party administrator.

The Plan provision governing eligibility for S&A benefits provides:

> If while covered for these benefits, an Employee becomes wholly and continuously disabled as a result of any injury or sickness so as to be prevented thereby from performing any and every duty of such Employee's occupation, and during the period of such disability is under treatment therefor by a physician licensed to practice medicine, the amount of monthly benefits for which the Employee is then covered shall be paid to the Employee each month during the period the Employee is so disabled and under such treatment.

(Art. IV, 4.07(a), AR 49).

Plaintiff last worked as a Manager of Global Telecommunications for General Motors, which is primarily a sedentary job.  (*See* AR 278).  Plaintiff's last day of work was on August 10, 2004.  (AR 276).  On August 12, 2004, Plaintiff completed a Statement of Claim for S&A benefits.  In support of his claim, Plaintiff submitted an Attending Physician Statement from Dr. Jeffrey S. Fischgrund, dated August 24, 2004.

2

Dr. Fischgrund, a specialist in orthopedic surgery, diagnosed Plaintiff with "thoracic scoliosis with low back pain" and noted that Plaintiff should not return to work until approximately September 11, 2004. (AR 277).

On September 14, 2004, Dr. Fischgrund prepared a Supplementary Report of Claim for S&A Benefits advising that the approximate return to work date would be October 20, 2004. (AR 274-75). Another Supplementary Report of Claim for S&A Benefits was submitted on October 18, 2004 by Dr. Ronald Taylor, a specialist in physical medicine. Dr. Taylor diagnosed Plaintiff with scoliosis and noted that "x-rays show severe rotoscoliosis." (AR 271). Dr. Taylor also indicated that Plaintiff's approximate return to work date would be November 10, 2004. (*Id.*).

Dr. Taylor examined Plaintiff again on November 9, 2004. In a report submitted on the same date, Dr. Taylor stated:

> By way of review, he has a 92-degree scoliosis. He has been off of work for 2 ½ months now because of his back problem. He has been seen by Dr. Fischgrund who did not really recommend surgery, although he wished to follow-up [sic] him depending on how he was doing. He has noted significant association of his problem with stress. He his [sic] dealing with this with Dr. Patel and a psychologist.

(AR 269). Dr. Taylor's report concluded by suggesting that Plaintiff continue on "'Off Work' status for two to three weeks." (*Id.*).

Subsequently, on December 7, 2004, Plaintiff submitted an additional Statement of Claim for S&A Benefits. (AR 265). Again, Plaintiff submitted an Attending Physician Statement. This time, the Attending Physician Statement was completed by Dr. H.C. Patel. (AR 266). Dr. Patel, a specialist in psychiatry, diagnosed Plaintiff with "major

3

depressive disorder single" and confirmed that he had treated Plaintiff for this psychiatric condition approximately sixteen times, beginning in July 2004. (*Id.*). In addition, Dr. Patel projected that Plaintiff would be able to return to work on March 1 or 11, 2005.[1] (*Id.*).

On March 2, 2005, Plaintiff was examined, at the request of Defendant, by Dr. Norman Samet, a board-certified psychiatrist and neurologist. Dr. Samet issued a nine-page report detailing his meeting with Plaintiff. (AR 252-60). In his report, Dr. Samet indicates that he spent approximately 35 minutes evaluating Plaintiff, (AR 252), and that "[n]o medical records were available for review." (AR 254). Dr. Samet recorded Plaintiff's job description, pertinent medical history, and psychosocial history. Dr. Samet diagnosed Plaintiff with the clinical disorder of major depression.[2] (AR 255). Dr. Samet noted that Plaintiff "has a history of marked scoliosis since age 11." (*Id.*). In addition, Dr. Samet noted that Plaintiff has "chronic, severe" psychosocial and environmental problems.

In the Analysis/Discussion section of his report, Dr. Samet states in pertinent part:

> In my opinion at this time, this examinee appears to have recovered significantly from his depression. Although he does complain that he gets severe attacks of pain which limit his ability to work, he does not feel that his scoliosis has deteriorated any further. He has taken great pains to be as active as possible. I feel that he is able to return to work from

---

[1] Dr. Patel's handwritten Attending Physician Statement is illegible and the Court cannot determine whether the return to work date was designated as March 1 or 11, 2005. (AR 266).

[2] Dr. Samet's diagnosis was Major Depression, Diagnostic Code 296.30. Dr. Patel's diagnosis on December 7, 2004, however, was Major Depressive Disorder Single, Diagnostic Code 296.21.

a psychiatric perspective.

(AR 259-60).

After the examination by Dr. Samet, Plaintiff was instructed by Defendant to report to Defendant's Medical Department for a back-to-work examination. On March 7, 2005, Plaintiff reported to the Medical Department as required. After Plaintiff signed in and before he saw a doctor, he was found on the floor calling for help. (AR 173). Plaintiff then called his wife. (*Id.*). Medical Department staff then placed Plaintiff on a wheelchair and wheeled him to a car driven by his wife so that he could be taken home. (*Id.*). The next day, March 8, 2005, Plaintiff was contacted by telephone and advised that he needed to report for a fitness-for-duty examination by 12:30 p.m on that same day. According to Defendant's computer records, Plaintiff informed the Medical Department that he would not be able to attend the examination due to "experiencing set backs." (AR 169).

On March 11, 2005, Plaintiff submitted another Supplemental Statement of Claim for S&A Benefits. This Claim was submitted by Dr. Patel and it indicated that Plaintiff's return to work date would be June 30, 2005. (AR 246).

On March 14, 2005, Plaintiff was examined, at the request of Defendant, by Dr. Bruce D. Abrams, a board-certified orthopedic surgeon. Like Dr. Samet, Dr. Abrams indicated in his report that "[n]o medical records were available for my review." (AR 242). The Analysis/Discussion section of Dr. Abrams' report states in pertinent part:

> From an orthopaedic standpoint, I find no significant
> disability that would prevent him from returning to his work
> activity at General Motors Headquarters in

5

>	telecommunications.  He does not require any work
>	restrictions.
>
>	It appears that there is a psychophysiologic phenomenon
>	present.

(AR 244).

On March 14, 2005, Defendant submitted a letter informing Plaintiff of the denial of S&A benefits.  This letter was designed for denying claims of unionized employees.  (*See* AR 236).  Apparently recognizing this error, Defendant sent a denial letter for salaried employees on April 12, 2005.[3]  (AR 235, 237-38). With respect to Plaintiff's orthopedic condition, the letter referred to both the Attending Physician's Statement prepared by Dr. Taylor, dated November 16, 2004, and the Independent Medical Examination ("IME") performed by Dr. Abrams.  (AR 237).  The letter indicated that Dr. Taylor's office was contacted on April 11, 2005.  (*Id.*).  Dr. Taylor's office indicated that Plaintiff was last seen on February 15, 2005 and there was no indication as to Plaintiff's return to work date.  (*Id.*; *see also* AR 165).  In addition, with respect to Plaintiff's depression, the letter referenced both Dr. Patel's Attending Physician's Statement, dated March 11, 2005, and Dr. Samet's IME.  (AR 237).  The letter concluded:

>	Based on the information above, Sickness and Accident
>	benefits have been paid through March 7, 2005.  However we
>	have not been provided with medical evidence of treatment
>	and certification to total disability for your orthopedic
>	condition past February 15, 2005 for your period of absence.

---

[3]Although this letter is dated April 6, 2005, it is clear based on the fact that the letter makes reference to contacting Dr. Taylor's office on April 11, 2005 that it was not sent on April 6, 2005.  (AR 237).  Furthermore, Defendant's phone records indicate that this letter was sent on April 12, 2005.  (AR 165).

6

> Therefore, we are unable to consider payment of Sickness and
> Accident benefits beyond March 7, 2005 at this time.

(*Id.*).

On April 25, 2005, Plaintiff submitted a letter dated April 20, 2005 to one of Defendant's benefits representatives. (AR 229). The letter was from Dr. Patel and Dr. Israel Woronoff, a licensed psychologist. In the letter, Dr. Patel and Dr. Woronoff repeated Dr. Patel's earlier diagnosis of major depressive disorder, single episode and added the diagnosis of post traumatic stress disorder. (AR 230). Drs. Patel and Woronoff opined: "we are hopeful that with present treatment [Plaintiff] will be able to return to work in three months." (*Id.*). Another letter from Dr. Taylor was sent on June 7, 2005. In this letter, Dr. Taylor states:

> I do feel that the mechanism of action of the stress
> aggravating his back pain is related to tensing the muscles
> around and [sic] are already arthritic and structurally
> abnormal spine. This emotional contraction of the muscles
> around the spine causes the same sorts of pain problems
> related to the facets in the spine that would be caused by any
> physical activity, i.e., emotional stress "physically"
> aggravates the spine.

(AR 226). Dr. Taylor concluded by stating that Plaintiff "is not currently able to return to his previous employment." (AR 227).

On June 20, 2005, Dr. Jackson E. Turner, a licensed psychologist, administered a Minnesota Multiphasic Personality Inventory – 2nd Edition ("MMPI-2") on Plaintiff, based on a referral by Dr. Woronoff. Dr. Turner noted: "[v]alidity scales of Mr. Jones's MMPI-2 indicated that he responded to the test's items in a candid and open manner, and his MMPI-2 profile is valid." (AR 223). Dr. Turner concluded by stating:

> Mr. Jones's MMPI-2 profile is consistent with the following DSM-IV diagnoses:
>
> Major Depressive Disorder (DSM-IV Code 296.2)
> Posttraumatic Stress Disorder (DSM-IV Code 309.81)

(AR 224).

On July 1, 2005, Defendant advised Plaintiff that it was denying his June 23, 2005 appeal of the denial of his S&A benefits. In the denial letter, Defendant stated:

> At the time of your appeal, we reviewed the documents you submitted for review. We also reviewed your claim file, as well as your letter requesting an appeal. However we have not been presented with sufficient medical evidence of treatment and certification to total disability for your orthopedic condition past February 15, 2005. Therefore, we must continue to advise that we are unable to consider further payment of Sickness and Accident Benefits beyond March 7, 2005.

(AR 222). The denial of Plaintiff's appeal completed the "minimum appeal process as required under ERISA." (*Id.*).

Subsequently, on July 15, 2005, Plaintiff submitted another Supplemental Statement of Claim for Sickness and Accident Benefits completed by Dr. Patel on July 14, 2005. Dr. Patel repeated his earlier diagnosis of major depression disorder and stated that Plaintiff could "possibly" return to work on October 30, 2005. (AR 225).

A letter refuting the IME report of Dr. Samet was submitted on August 23, 2005 by Drs. Patel and Woronoff. In this letter, Drs. Patel and Woronoff noted that Plaintiff denied saying that his working relationship with his supervisor "was ever stormy and difficult," and he also denied saying that "he had recovered adequately enough to return to work." (AR 217). Furthermore, Drs. Patel and Woronoff observed the Plaintiff's

8

"background information was not detailed in the report which deserves mention." (*Id.*). They continued by stating that Plaintiff discovered his mother's body in her home six years ago after being strangled and that Plaintiff had donated a kidney to his brother in 1981, who later died. (*Id.*). Finally, Drs. Patel and Woronoff recommended "an additional four months of medical leave . . . ." (AR 218).

On the same day, Plaintiff sent a letter to Defendant's Employee Benefit Plans Committee ("EBPC") "requesting appeal of the decision [denying S&A benefits], as part of the voluntary appeals process." (AR 216). Defendant responded to Plaintiff's letter on September 2, 2005 and notified Plaintiff that "the next step in the appeal process is to follow the voluntary appeal process defined under the [Plan]," and that such an appeal must be submitted in writing to the Plan Administrator. (AR 215).

On September 4, 2005, Plaintiff submitted another letter to the EBPC describing his position on the denial of S&A benefits. (AR 211-13). Plaintiff repeated that he never told Dr. Samet that his condition had improved. (AR 211). Furthermore, Plaintiff stated that Dr. Samet's position is inconsistent with the opinions of his doctors. (*Id.*). Plaintiff also asserted that Defendant failed to consider Dr. Taylor's June 7, 2005 report indicating that Plaintiff is not able to return to work due to his orthopedic condition. (AR 212). Plaintiff also argued that Defendant failed to consider Dr. Turner's letter reaffirming Dr. Patel and Dr. Woronoff's diagnoses based on the results of the MMPI-2 test. (*Id.*).

In the September 4, 2005 letter, Plaintiff also described what happened on March 7, 2005 when he reported for a back-to-work exam. (*Id.*). Plaintiff requested that Defendant offer a neutral location to conduct a back-to-work exam, which would "help

9

reduce stress [] and help avoid [] a severe reaction." (*Id.*).

On September 29, 2005, Defendant, by letter, stated that Plaintiff's previous denial was handled "by Sedgwick CMS, our third party claims administrator, as required under the Department of Labor guidelines" and that it will construe Plaintiff's September 4, 2005 letter "as a request for review by the Plan Administrator." (AR 210). Plaintiff contacted Defendant on November 10, 2005 by letter indicating that he has yet to receive a response to his appeal to the Plan Administrator. (AR 209). The next day Defendant sent a letter to a Physician Advisor requesting the medical review of Dr. Samet's March 2, 2005 report and the medical statements in the file submitted by Dr. Patel. Defendant asked the Physician Advisor to give an opinion on whether Plaintiff's medical information substantiates "total disability." (AR 208).

Dr. Richard Harris, the Physician Advisor, reviewed the medical statements on November 15, 2005 and issued a report on the same day. Dr. Harris confirmed that he had the following information for review: (1) Dr. Samet's March 2, 2005 report; (3) Dr. Abrams's March 14, 2005 report; (3) Drs. Patel and Woronoff's August 23, 2005 letter; (4) Dr. Turner's April 12, 2005 report; (5) Dr. Patel's July 14, 2005 Supplemental Statement of Claim for Sickness and Accident Benefits; and (6) Dr. Patel's December 7, 2004 Statement of Claim for S&A Benefits. (AR 205). Dr. Harris reviewed all the above information. In reviewing Dr. Turner's report, Dr. Harris noted that "this psychological testing is based on answers to questions, so it is entirely subjective." (*Id.*).

In the section entitled "PA Rationale," Dr. Harris stated:

> The information shows that the precipitant is the problem in

10

> the workplace, which has not been resolved. [Plaintiff] is concerned about the threat to his employment and worried that he could be fired. As such, he has responded with some combination of pain and depression. However, an IME that was performed by Dr. Abrams did not find evidence from an orthopedic standpoint of a significant limitation of function. It is possible that disability has provided some from [sic] of refuse [sic] for [Plaintiff] because should he return to work he worries about loosing [sic] his job. He reports some limitation in his day-to-day functioning, but objective information demonstrated significant psychiatric impairment is limited.
>
> Dr. Samett's [sic] IME is not clear. There is some suggestion from the report that he has had depressed mode and that he is labile, irritable, withdrawn, demanding, and unable to control emotions. It is not clear, if he actually demonstrated this in the examination. If he did then that would be evidence of some objective data; however, even that objective data does not in itself demonstrate disabling condition. There is no evidence of psychomotor retardation, tearfulness, and difficulty initially in conversation due to significant depression. The main problem appears to be pain and anxiety with anxiety perhaps intensified pain.
>
> [Plaintiff] did say one thing, which is likely true. That is, if he had a different boss in a different work situation, it is likely he would be able to function. As such, from a psychiatric perspective, [Plaintiff] is not suffering from a global limitation of function, but some limitation of function related only to a very specific job environment. Thus, there is no evidence for a total disability. The situation in his current job environment is conflictual [sic], but he is able to function in other work environments. Because of that he does not have a psychiatric impairment that is as [sic] severity is [sic] to cause a significant and global limitation of functioning.

(AR 206-07).

Dr. Patel submitted another Supplemental Claim for S&A Benefits on November 22, 2005. In this submission, Dr. Patel diagnosed Plaintiff again with major depression

11

disorder and stated that Plaintiff could "possibly" return to work on February 28, 2006. (AR 203).

One day later, Defendant sent Plaintiff a letter denying his voluntary appeal. This letter noted all of the Attending Physician's Statements, Supplementary Reports of Claims for S&A Benefits, and Supplemental Statements of Claims for S&A Benefits submitted by Plaintiff's doctors. In addition, the letter noted the IMEs of Drs. Abrams and Samet and the file review of Dr. Harris. In denying Plaintiff's appeal, Defendant states:

> In summary, we have not been provided with any additional objective medical evidence that would enable us to disregard the results of the Impartial Medical Examinations that occurred on March 2, 2005 and March 14, 2005. Additionally, coverage provided by Dr. Siegel, GM Medical Director from March 3 through March 7, 2005, ceased as of March 8, 2005, as you did not report to medical for a fitness for duty exam, as instructed. Therefore, we have upheld the denial of Sickness and Accident Benefits for the period of absence from March 8, 2005, through October 29, 2005.

(AR 202).

Subsequently, on March 17, 2006, Dr. Patel submitted yet another Supplemental Statement of Claim for S&A Benefits stating that Plaintiff would "possibly" be able to return to work on June 30, 2006. (AR 199). Plaintiff commenced the present action on March 21, 2006.

## II. Standard of Review

Both parties agree, that, in this case, the standard for reviewing the administrative record is "the highly deferential arbitrary and capricious standard of review," because the

Plan gives the administrator discretionary authority to construe the terms of the plan or determine eligibility for benefits. *Yeager v. Reliance Standard Life Ins. Co.*, 88 F.3d 376, 380 (6th Cir. 1996);(AR 30-31). "This standard 'is the least demanding form of judicial review of administrative action . . . . When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary and capricious.'" *Killian v. Healthsource Provident Adm'rs, Inc.*, 152 F.3d 514, 520 (6th Cir. 1998)(alteration in original)(quoting *Perry v. United Food & Commercial Workers Dist. Unions 405 & 442*, 64 F.3d 238, 241 (6th Cir. 1995)). In other words, an administrator's decision will be upheld so long as it is "rational in light of the plan's provisions." *Daniel v. Eaton Corp.*, 839 F.2d 263 (6th Cir. 1988).

While deferential, the arbitrary and capricious standard of review "is not . . . without some teeth." *McDonald v. W.-S. Life Ins. Co.*, 347 F.3d 161, 172 (6th Cir. 2003)(quoting *Cozzie v. Metro Life Ins. Co.*, 140 F.3d 1104, 1107-08 (7th Cir. 1998)). "The obligation under ERISA to review the administrative record in order to determine whether the plan administrator acted arbitrarily and capriciously 'inherently includes some review of the quality and quantity of the medical evidence and the opinions on both sides of the issues.'" *Evans v. Unumprovident Corp.*, 434 F.3d 866, 875-76 (6th Cir. 2006)(quoting *McDonald*, 347 F.3d at 172).

**III.   Analysis**

Plaintiff contends that by relying on Dr. Samet's and Dr. Arbrams's IMEs, Defendant improperly ignored the opinions of Plaintiff's treating doctors. Furthermore, Plaintiff contends that Defendant acted arbitrarily and capriciously when it relied on a

13

selective, inaccurate, and inadequate review of Plaintiff's medical file.  Finally, Plaintiff argues that Dr. Harris's file review applies the "total disability" standard, which is not the standard set forth in the Plan for determining eligibility for S&A benefits.  In response, Defendant contends that it was neither arbitrary nor capricious when it chose to rely on the IMEs of Drs. Samet and Abrams and the file review of Dr. Harris.

At issue in this case, is whether Defendant, as Plan Administrator, can choose to rely on the opinions of independent medical examiners, rather than those of Plaintiff's treating physicians.  The Supreme Court has held that in deciding whether benefits are due under an ERISA plan, a plan administrator need not "accord special weight to the opinions of a claimant's physician."  *Black & DeckerDisability Plan v. Nord*, 538 U.S. 833, 834, 123 S. Ct. 1965, 1972 (2003).  Furthermore, a plan administrator does not have "a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation."  *Id.*  Nonetheless, "[p]lan administrators . . . may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician."  *Id.*

Also at issue in the instant case is whether Defendant acted arbitrarily or capriciously when it relied on Dr. Harris' file review concluding that Plaintiff was not totally disabled.  (AR 206-07).  The Sixth Circuit has stated that although there is "'nothing inherently objectionable about a file review by a qualified physician in the context of a benefits determination,' it is a factor to be considered in reviewing the propriety of an administrator's decision regarding benefits."  *Evans v. Unumprovident Corp.*, 434 F.3d 866, 877 (6th Cir. 2006)(quoting *Calvert v. Firstar Fin., Inc.*, 409 F.3d

14

286, 296 (6th Cir. 2005)).

With regard to Plaintiff's orthopedic condition, Defendant, on three separate occasions, articulated its reasons for denying S&A benefits. In the denial letters of April 12, July 1, and November 23, 2005, Defendant stated that Plaintiff failed to provide additional medical evidence that would enable it to disregard Dr. Abrams's and Dr. Samet's IMEs. (AR 202, 222, 237). As indicated by the administrative record and the denial letters, at the time of Defendant's initial denial of S&A benefits on April 12, 2005, Dr. Taylor had only certified disability through February 15, 2005. Defendant made this conclusion after contacting Dr. Taylor's office on April 11, 2005 and learning that Dr. Taylor had last seen Plaintiff on February 15, 2005 and had not submitted a certification of disability after that appointment. (AR 237; *see also* AR 165). Furthermore, in each of these denial letters, Defendant acknowledged the diagnoses of the physicians treating Plaintiff's orthopedic condition, Drs. Fischgrund and Taylor. Defendant, however, chose to rely on Dr. Abrams's IME and his conclusion that Plaintiff was able to return to work.

Contrary to Plaintiff's contentions, this Court does not believe Defendant acted unreasonably by relying on the IME of Dr. Abrams. Although Dr. Abrams did not list Dr. Taylor as one of Plaintiff's treating physicians in his report, he did record the observations he made after conducting a physical examination of Plaintiff. He also reviewed the "x-rays from Weissman, Gitlin, Herkowitz, & Fischgrund's office." (AR 244). Furthermore, although Plaintiff asserts that Dr. Abrams failed to discuss the possible link between Plaintiff's depression and back pain, Dr. Abrams did note that "[i]t appears that there is a psychophysiologic phenomenon present." Nonetheless, he

15

concluded that Plaintiff could return to work "[f]rom an orthopaedic standpoint." (AR 244).

Moreover, with regard to Plaintiff's psychiatric condition, Defendant, in denying Plaintiff S&A benefits, relied on the examination of Dr. Samet. Dr. Samet, like Dr. Patel, diagnosed Plaintiff with major depression. (AR 255). Dr. Samet, however, opined that he thought that Plaintiff had recovered from his depression and that medication was helping control the symptoms of his depression. (AR 259-60).

Plaintiff contends that Dr. Samet's report is inadequate for a number of different reasons.[4] Dr. Samet's report, however, indicates that he did ask Plaintiff questions about how his depression relates to his ability to work. (AR 254-55). Furthermore, Dr. Samet mentions that "[a]lthough [Plaintiff] does complain that he gets severe attacks of pain which limit his ability to work, he does not feel that his scoliosis has deteriorated any further." (AR 260). Ultimately, Dr. Samet concluded that Plaintiff was capable of returning to work "from a psychiatric perspective." (*Id.*).

In relying on the opinions of Drs. Abrams and Samet, this Court does not believe Defendant acted arbitrarily or capriciously. The plan specifically states that the "Carrier,[5]

---

[4] Specifically, Plaintiff contends that Dr. Samet failed to: (1) comment on the connection between Plaintiff's emotional illness and his back pain; (2) review medical records provided by Plaintiff; (3) request other medical records; (4) comment on how Dr. Samet's diagnosis is consistent with finding that Plaintiff can function in a stressful work environment; (5) comment on credibility; and (6) comment on Plaintiff's emotional history and vulnerability regarding Plaintiff's Mother's murder and Brother's death.

[5] "Carrier" is defined by the plan as "the entity by which coverages are underwritten or benefits are paid. As used in this Program, the term shall include, but is not limited to, the following types of entities: (a) General Motors Corporation; (b) an insurance company; (c) a non-governmental administrative service." (Art. II 2.03, AR 13).

16

at its own expense, shall have the right to have such medical examinations of an Employee who is eligible to receive Sickness and Accident Benefits as it may reasonably require, made by a physician designated by it." (Art IV, 4.07(k)(2), AR 55). Consequently, this Court believes that, in relying on these IMEs, Defendant's actions were "rational in light of the plan's provisions." *Daniel*, 839 F.2d at 267.

In addition, Defendant, in its final denial of November 23, 2005, relied on the file review of Dr. Harris. Dr. Harris noted that although "Dr. Samett's [sic] IME is not clear" on whether Dr. Samet observed objective evidence of Plaintiff's depression, the objective evidence possibly observed by Dr. Samet does not necessarily mean that Plaintiff is unable to return to work based on his psychiatric condition. (AR 207). Plaintiff contends that it was unreasonable to rely on Dr. Harris' file review because Dr. Harris applies the "total disability" standard, which governs eligibility for "Extended Disability Benefits." While the Court agrees that the "total disability" standard is not the standard to be applied in determining eligibility for S&A benefits and therefore, it would have been unreasonable to rely on Dr. Harris' file review as the sole reason to deny benefits, Defendant also relied on the IMEs of Drs. Abrams and Samet. (AR 202)(stating that "we have not been provided with any additional medical evidence that would enable us to disregard the results of the Impartial Medical Examinations that occurred on March 2, 2005 and March 14, 2005").

Plaintiff cites a number of cases for the proposition that a denial of benefits based

17

on selective, inaccurate, and inadequate file review is arbitrary and capricious.[6] As stated above, this Court believes that Defendant's decision to deny Plaintiff S&A benefits was based on more than Dr. Harris' file review.  Finally, Plaintiff's procedural arguments regarding the application of 29 U.S.C. Section 1133 and 29 C.F.R. Section 2560.503-1(g)(1)[7] are not properly before this Court because they were not pled in Plaintiff's complaint, which alleges that Defendant "unlawfully and arbitrarily denied disability benefits to Plaintiff in violation of ERISA, 29 U.S.C. § 1132."  (Compl. ¶17).

## IV.  Conclusion

Based on the evidence in the administrative record, this Court believes that Defendant did not act arbitrarily or capriciously in denying Plaintiff S&A benefits under the Plan.  Defendant made its decision based on two IMEs performed by a board-certified psychiatrist and a board-certified orthopedic surgeon and a file review conducted by another psychiatrist.  Reviewing the administrative record under the highly deferential standard of review applicable in this case, this Court believes that relying on the opinions

---

[6]The cases cited by Plaintiff to support this proposition include: *Evans v. Unumprovident Corp.*, 434 F.3d 866 (6th Cir. 2006); *Kalish v. Liberty Mut./Liberty Life Assurance Co. of Boston*, 419 F.3d 501 (6th Cir. 2005); *Calvert v. Firstar Finance, Inc.*, 409 F.3d 286 (6th Cir. 2005); and *Railey v. Coop. Benefit Admin.*, 05CV-104-M, 2006 U.S. Dist. LEXIS 37361 (W.D. Ky. June 5, 2006).  In *Evans*, *Kalish*, and *Railey*, the plan administrator relied only on the file reviews in denying Plaintiff plan benefits.  *Evans*, 434 F.3d at 879; *Kalish*, 419 F.3d at 510; *Railey*, 2006 U.S. Dist. LEXIS 37361, *22.  Furthermore, although the administrator in *Calvert* had an IME performed on the plaintiff, the administrator "relied almost exclusively" on the conclusions of the doctor performing the file review.  *Calvert*, 409, F.3d at 296.  Here, Defendant also relies on the medical examinations of Dr. Abrams and Samet.  Thus, this Court believes these cases are not controlling.

[7]Plaintiff makes these arguments on page 10 of its Response to Defendant's Motion for Judgment on the Administrative Record.

of these medical professionals was a reasonable explanation for denying Plaintiff S&A benefits.

Accordingly,

**IT IS ORDERED**, that Plaintiff's Motion for Judgment on the Administrative Record is **DENIED**;

**IT IS FURTHER ORDERED**, that Defendant's Motion to Affirm the Administrator's Decision With Regard to S&A Benefits or, in the alternative, for Judgment on the Administrative Record is **GRANTED**.

                                                s/PATRICK J. DUGGAN
                                                UNITED STATES DISTRICT JUDGE

Copies to:
Ralph Sirlin, Esq.
David M. Davis, Esq.